Filed 5/21/24  P. v. Mackbee CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>CHARLES ANTHONY MACKBEE,<br><br>        Defendant and Appellant. | B317081<br><br>(Los Angeles County<br>Super. Ct. No. NA091413) |

APPEAL from an order of the Superior Court of Los Angeles County, James D. Otto, Judge.  Affirmed.

Jeralyn B. Keller, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Noah P. Hill, Supervising Deputy Attorney General, and David F. Glassman, Deputy Attorney General, for Plaintiff and Respondent.

\* \* \* \* \* \*

Charles Anthony Mackbee (defendant) was convicted of murder in 2014 when he and two others orchestrated a sham purchase of medical marijuana so they could rob the seller at gunpoint; they shot the seller and stole his drugs. In 2021, the trial court denied defendant's motion to vacate his conviction under Penal Code section 1172.6 (former section 1170.95)[1] after an evidentiary hearing at which the court found, beyond a reasonable doubt, that defendant was a major participant in the robbery who had acted with reckless indifference to human life. Substantial evidence supports these findings, so we affirm.

## FACTS AND PROCEDURAL BACKGROUND

### I.    Facts

In early 2011, Philip Williamson (Williamson) was in the business of importing a high-grade marijuana strain called "sour diesel" from northern California and reselling it to marijuana dispensaries in West Los Angeles. He ran the business out of his Westside apartment, and kept a gun. Just before March 24, 2011, Williamson had stowed in his apartment approximately 11

---

[1]    All further statutory references are to the Penal Code unless otherwise indicated.

Effective June 30, 2022, section 1170.95 was renumbered section 1172.6 (Stats. 2022, ch. 58, § 10). For simplicity's sake, we will refer to the section by its new numbering only.

pounds of the sour diesel marijuana and somewhere between $100,000 and $375,000 or "even more than that" in cash.

Marcel Mackabee (Marcel)[2] knew Williamson and would sometimes smoke marijuana with him. Marcel decided to rob Williamson. Marcel enlisted the aid of defendant, his cousin; defendant recruited Kenneth Ray Johnson, whom defendant referred to as his "right-hand man." Johnson and his girlfriend lived in defendant's garage. Defendant later said they had all agreed to "set . . . up" Williamson to rob him "and [Johnson] would be the shooter."

The robbery took place on March 24, 2011. Around noon that day, Marcel drove his 4Runner to West Los Angeles: A video camera at a Westside 7-Eleven recorded Marcel buying Verizon calling cards at 12:27 p.m., and the receipt for that purchase was found in Williamson's apartment. Marcel's cell phone also "pinged" off of a cell tower near that 7-Eleven at the same time, and Marcel placed a call to defendant's cell phone.

Later that evening, Marcel drove Williamson to defendant's garage in Long Beach. Defendant and Johnson met Marcel and Williamson inside the garage. Johnson posed as a businessman; he wore a suit and brought a briefcase. The meeting in the garage ended when either defendant or Johnson shot Williamson once in the head. It is unclear which of the two pulled the trigger. Johnson told his girlfriend he did it, but defendant told others he had shot Williamson because he wanted the money and "the shit" from him. Defendant showed his girlfriend a newspaper article about the robbery and said, "This is the man

_____

[2]    We use his first name to avoid confusion given the similarity of his last name to defendant's. We mean no disrespect.

3

that I shot," and told his uncle he had to leave town because he had killed someone.

Defendant, Johnson, and Marcel put Williamson in the back of the 4Runner and dumped him in an alley in just his underwear, socks, and a T-shirt under a flannel shirt. Beside his body, they left a pillow whose case matched a comforter in defendant's mother's room. Williamson was still alive and was still gasping for air when paramedics found him. He died a few days later from the single gunshot wound to the head.

After dumping Williamson, defendant came back to the garage and took some floor mats from the unit outside. He placed the mats into bags, poured in bleach, tied the bags, and shook them. In the days after the robbery, defendant and Johnson burned some of their clothes in a fire pit. Meanwhile, the garage floor had a stain that looked like "dried up blood" and the futon in the garage had blood spots. Defendant and Johnson repeatedly scrubbed the garage floor with chemicals, and disposed of the futon. After the robbery, both defendant and Johnson possessed sour diesel marijuana, including a big bag of it that they stored in the garage. Defendant told a friend he was "sitting on about $20,000."

Approximately one month after the robbery, defendant retrieved a gun from a cabinet in the garage, took it apart, put it in a bag, and threw it in the trash.

## II.    Prosecution, Conviction, and Appeal

In 2012, the People charged defendant and Johnson with first degree murder (§ 187, subd. (a)).[3]  The People also alleged

---

[3]    Marcel was charged and tried separately. His conviction and sentence were affirmed on appeal. (*People v. Mackabee* (June 20, 2014, B250143) [nonpub. opn.].)

4

the special circumstance that the murder had been committed in the course of a robbery (§ 190.2, subd. (a)(17)) and alleged that a principal was armed with a firearm (§ 12022, subd. (a)(1)). The People further alleged that defendant had served four prior prison terms (§ 667.5, subd. (b)) and that Johnson had served one.

Following trial, the jury convicted defendant and Johnson of first degree murder, and found the special circumstance and firearm allegations to be true. The court struck the prior prison term enhancements.

Due to the special circumstance finding, the trial court sentenced defendant to life without the possibility of parole on the murder count; to that, the court added an additional year for the firearm allegation.

On appeal in *People v. Johnson et al.* (Mar. 24, 2016, B256273), in a nonpublished opinion, this court concluded that the trial court's special circumstances jury instruction omitted an element, concluded that the omission was not harmless beyond a reasonable doubt, and vacated the special circumstance finding and defendant's sentence based on that finding. We also concluded that the evidence at trial was sufficient to support a special circumstance finding, such that the People could retry defendant on the special circumstance allegation. We remanded for the People to elect whether to retry the special circumstance or to have the trial court resentence defendant without that finding.

On remand, the People elected not to retry the special circumstance allegation. Consequently, the trial court resentenced defendant to 26 years to life, comprised of 25 years to

life for the murder plus one additional year for the firearm enhancement.

## III. Petition to Vacate Under Section 1172.6

In May 2020, defendant filed a petition for resentencing under section 1172.6. After appointing counsel to represent defendant, and after receiving a response from the People and further briefing from defendant, the trial court in March 2021 issued an order to show cause and set the matter for an evidentiary hearing.

On November 3, 2021, the trial court held an evidentiary hearing. The People introduced the transcripts from the original trial; defendant introduced no new evidence and did not testify.

On November 30, 2021, the trial court issued a three-page order denying defendant's petition. The court stated that although "there was substantial evidence that . . . Johnson was the actual shooter," "it makes no difference" because defendant was "present and[,] under a *Banks/Clark* analysis," was a "major participant who acted with reckless indifference to human life."

## IV. Appeal

Defendant filed this timely appeal.

## DISCUSSION

Defendant argues that the trial court erred in denying his petition to vacate his murder conviction and to resentence him under section 1172.6.

In 2018, our Legislature amended the definition of "murder" to preclude a jury from "imput[ing]" the "[m]alice" element of that crime "based solely on [a defendant's] participation in a crime." (§ 188, subd. (a)(3).) Our Legislature's purpose was to ensure that "[a] person's culpability for murder [is] premised upon that person's own actions and subjective mens

6

rea." (Stats. 2018, ch. 1015, § 1, subd. (g).)  As amended, liability for murder is limited to persons (1) who are the actual killer; (2) who aided and abetted the actual killer in the murder (that is, who acted with the intent to kill); or (3) who were a major participant in the underlying felony that resulted in the killing, but only if they also acted with reckless indifference to human life.  (§§ 188, subd. (a)(3), 189, subd. (e); e.g., *People v. Johns* (2020) 50 Cal.App.5th 46, 58-59.)

Section 1172.6 is the procedural vehicle by which persons convicted in now-final judgments can seek to vacate convictions that do not satisfy the current definition of "murder."  Where, as here, a defendant files a facially sufficient petition and the record does not otherwise foreclose relief as a matter of law, the trial court must issue an order to show cause and convene an evidentiary hearing.  (§ 1172.6, subd. (c).)  At the hearing, the People have the burden of proving to the trial court, acting as an independent factfinder, that a defendant is guilty of murder on a still-valid theory.  (§ 1172.6, subd. (d)(3).)

As pertinent here, the trial court found beyond a reasonable doubt that defendant was guilty under the still-valid theory that he was a major participant in the robbery that resulted in Williamson's death and that he acted with reckless indifference to human life.  Our task is to assess whether "substantial evidence"—that is, ""evidence that is reasonable, credible, and of solid value""—supports the *trial court's* independent finding that defendant acted with reckless indifference.  (*People v. Nieber* (2022) 82 Cal.App.5th 458, 476.)  In so doing, we view the evidence in the light most favorable to the court's finding, drawing all reasonable inferences in support of that finding.  (*Ibid.*)

7

## I.    Pertinent Legal Principles

Because the propriety of the trial court's denial of defendant's petition turns on whether substantial evidence supports the court's finding that defendant was a major participant in the robbery who acted with reckless indifference to human life, further explication of those terms is helpful.

### A.    *Major participant*

In *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*) and *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*), our Supreme Court defined a "major participant" in a robbery as someone whose "personal involvement" is "substantial"; such a participant "need not be the ringleader," but his involvement must be "greater than the actions of an ordinary aider and abettor." (*Banks*, at p. 802; *People v. Williams* (2015) 61 Cal.4th 1244, 1281.)  Courts are to examine the totality of the circumstances when evaluating the extent of participation, including several factors our Supreme Court identified in *Banks* as relevant but not dispositive on the issue:  (1) the defendant's role in planning the robbery; (2) his role in supplying or using lethal weapons; (3) his awareness of the "particular dangers posed by the nature of the crime, weapons used, or past experience or conduct of the other participants"; (4) his presence at the scene of the killing and thus whether he was "in a position to facilitate or prevent the actual murder"; and (5) his actions after the use of lethal force.  (*Banks*, at p. 803; *Clark*, at p. 611.)

### B.    *Reckless indifference to human life*

In *Banks*, *supra*, 61 Cal.4th 788 and *Clark*, *supra*, 63 Cal.4th 522, our Supreme Court also spelled out that a defendant acts with reckless indifference to human life when he ""knowingly engag[es] in criminal activities known to carry a

grave risk of death." '" (*Banks*, at p. 801, quoting *People v. Estrada* (1995) 11 Cal.4th 568, 577, quoting *Tison v. Arizona* (1987) 481 U.S. 137, 157.) This standard "has a subjective and an objective" component. (*In re Scoggins* (2020) 9 Cal.5th 667, 677 (*Scoggins*).) To satisfy the subjective component, "'[t]he defendant must be aware of and willingly involved in the violent manner in which the [underlying felony] is committed,' and . . . must consciously disregard 'the significant risk of death his or her actions create.'" (*Ibid.*, quoting *Banks*, at p. 801.) The key is whether the defendant evinces "a willingness to kill (or to assist another in killing) to achieve a distinct aim, even if the defendant does not specifically desire that death as the outcome of his actions." (*Clark*, p. 617.) To satisfy the objective component, the risk of death "" "must be of such a nature and degree that, considering the nature and purpose of the [defendant's] conduct and the circumstances known to him . . . , its disregard involves a gross deviation from the standard of conduct that a law-abiding person would observe in the [defendant's] situation." '" (*Scoggins*, at p. 677, quoting *Clark*, at p. 617.)

Our Supreme Court has identified a number of considerations bearing on whether a defendant has acted with reckless indifference to human life. "No one of these considerations is necessary, nor is any one of them necessarily sufficient" (*Banks*, *supra*, 61 Cal.4th at p. 803); what matters is the totality of the considerations (*Scoggins*, *supra*, 9 Cal.5th at p. 677). Those considerations are: (1) "Did the defendant use or know that a gun would be used during the [underlying] felony," and, relatedly, "[h]ow many weapons were ultimately used?"; (2) "Was the defendant physically present at the crime," such that he

9

had "the opportunity to restrain the crime or aid the victim?"; (3) "What was the duration of the interaction between the perpetrators of the [underlying] felony and the victims?"; (4) "What was the defendant's knowledge of his . . . confederate's propensity for violence or likelihood of using lethal force?"; and (5) "What efforts did the defendant make to minimize the risks of violence during the [underlying] felony?" (*Ibid.*, citing *Clark*, *supra*, 63 Cal.4th at pp. 618-623.)

## II.    Analysis

As a threshold matter, defendant argues that we are compelled to reject the trial court's findings that he was a "major participant" and "acted with reckless indifference" because his role in the robbery was "largely a mystery" and "largely unexplained," given the absence of any evidence of his "conduct, thoughts, or speech at the time of the shooting." This argument fails legally and factually. It fails legally because defendant cites no authority for his implicit suggestion that no jury or court can find that a defendant was a major participant who acted with reckless indifference to the value of human life unless it is known precisely what he did, thought, or said at every second. Defendant's argument fails factually because it completely ignores the evidence in the record as well as the pertinent standard of review. That evidence, as discussed below, amply supports the trial court's findings.

### A.    *Major participant*

Substantial evidence supports the trial court's finding that defendant was a major participant in the robbery of Williamson. Defendant, Johnson, and Marcel certainly had a plan: Marcel induced Williamson to come with him to Long Beach, ostensibly on the promise of having a buyer lined up, and drove Williamson

10

to defendant's garage; defendant recruited his "right-hand man" as that buyer; and defendant and Johnson brought at least one gun to the garage to force Williamson to hand over the marijuana he brought for the purported sale. The robbery may have been Marcel's idea, but there is evidence that defendant assisted with the planning by supplying the faux buyer as well as the location for the transaction. Thus, defendant is simply incorrect when he argues that "[t]here is no evidence [he] played any role in the planning" of the robbery. The evidence also supports the inference that defendant may have been the shooter (and hence used a lethal weapon), because defendant admitted as much to his girlfriend and uncle, and also had a gun in his possession after the robbery. Thus, defendant's assertion that there was no evidence *he* was armed is unsupported by the record. Although there was no evidence that defendant knew Johnson had engaged in violence in the past, it is fair to infer that defendant knew of the particular dangers posed by bringing a gun into a small, enclosed garage in order to rob a drug dealer. Defendant responds that there was no reason to think that a business transaction—when Johnson got dressed up to look like a legitimate buyer—would result in a shooting, but this argument utterly ignores that defendant *knew* from the start that the business transaction was a ruse and that the plan all along was to rob Williamson at gunpoint. Defendant was present in the garage when Williamson was shot, and hence in a position to stop the shooting. And after the use of lethal force, defendant and Johnson worked together to strip Williamson out of his clothes and then transport and dump his body in an alleyway—all while Williamson was still breathing.

11

### B.    *Reckless indifference to human life*

Substantial evidence supports the trial court's finding that defendant knowingly engaged in criminal activities known to carry a grave risk of death because he evinced a willingness to kill that entailed a gross deviation from the standard of conduct a law-abiding person would observe, and hence acted with reckless indifference to human life.

More generally, defendant and his cohorts engaged in conduct that carries with it a particularly high risk of violence because they planned and carried out the robbery of an armed drug dealer—a crime with a particularly high risk of violence. (*In re McDowell* (2020) 55 Cal.App.5th 999, 1013.)  Defendant also played a central and integral role in the planning and execution of the robbery, invoking the maxim that "the greater the defendant's participation in the [underlying] felony . . . , the more likely he or she acted with reckless indifference to human life." (*People v. Garcia* (2020) 46 Cal.App.5th 123, 147.)

More specifically, the pertinent *Banks* and *Clark* factors confirm that defendant acted with reckless indifference to human life.  Although there is no evidence that defendant had foreknowledge of Johnson's propensity for violence or likelihood of using lethal force and the record does not indicate how long Johnson and defendant interacted with Williamson in the garage before shooting him, most of the other factors support the trial court's finding of reckless indifference.  Defendant knew a gun would be used to rob Williamson; indeed, defendant said that *the plan* was for Johnson to "shoot" Williamson.  Defendant was physically present at the scene of the robbery and was in a position to render aid to Williamson after he was shot.  He did not; instead, he callously pulled off Williamson's clothes, stuffed

12

him in a car, and dumped his body in an alleyway—all as Williamson was still struggling to breathe.  Defendant argues that there is no evidence he was physically close enough to Johnson to prevent Johnson from taking a sudden action to harm Williamson.  We reject this argument:  The robbery occurred in a garage, not a stadium; no one was more than a few steps and an arm's length away from anyone else.  And defendant took no effort to minimize the risk of violence during the underlying felony.  Instead, he helped his friend maneuver a drug dealer into a small, enclosed space, while they were armed with a gun, in order to wrest drugs and money from their intended victim.

## DISPOSITION

The order is affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.

HOFFSTADT


We concur:


_____, Acting P. J.

ASHMANN-GERST


_____, J.

CHAVEZ